1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

```
                                              FILED
                                     CLERK, U.S. DISTRICT COURT

                                          July 28, 2015

                                    CENTRAL DISTRICT OF CALIFORNIA
                                    BY: _____PMC_____ DEPUTY
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JAMES REYNOLDS, | ) | Case No. 2:15-cv-2846-SVW-AS |
| Plaintiff, | ) | |
| | ) | ORDER REMANDING THE CASE |
| v. | ) | |
| | ) | |
| THE BOEING COMPANY, et al., | ) | JS - 6 |
| Defendants. | ) | |
| | ) | |

The Boeing Company removed this case, which, on its face, involved non-diverse parties. Boeing contended that the non-diverse defendant was fraudulently joined. Because the Court disagrees, it must remand the case.

**BACKGROUND**

James Reynolds is a 76 year old employee of the Boeing Company. Compl., ¶ 10, ECF No. 1-1 Exh. A. He alleged that his direct supervisor, Douglas Choi, and other management personnel berated him with ageist comments. *Id.* at ¶ 11. After concomitant stress, anxiety, and depression then forced him to take a medical leave of absence, *id.* at ¶ 12, Reynolds sued his employer and Choi, advancing hostile work environment and intentional infliction of emotional distress claims against the latter. *Id.* at ¶¶ 73-86.

Discovery proceeded and Reynolds was deposed. Reynolds testified that Choi had asked him "numerous times, 'When are you going to retire?'" and told him "You are an elderly employee, and we

1 want — we are going to get someone younger than you to replace you." Decl. of Andrew K. Haeffle,

2 Exh. B at 38:20-25, 39:4-8, ECF No. 19 ("Reynolds Dep."). But, when asked about the context of the

3 retirement inquiries, Reynolds said that they were made during performance reviews, *id.* at 44:11-18,

4 Choi was "[j]ust discussing — he wanted to know what my plans were," *id.* at 40:15-18, and Choi

5 exhibited "no irritation . . . [as] he was just doing his job, just stating what he had to state," *id.* at 63:15-

6 19. When asked about the context of Choi's replacement comment, Reynolds testified that the remark

7 was made directly to him on only one occasion in "[t]he first part of 2013." *Id.* at 44:19-45:9. Reynolds

8 also testified that Choi told him during a performance review that he "need[ed] more training [on certain

9 computer programs]. But because of your age, we can't frankly justify doing that." *Id.* at 41:17-24. And

10 when asked whether his orthopedic symptoms were attributable to prolonged sitting, he said, "Right.

11 Yes. That's it, I believe." *Id.* at 38:5-8. Boeing then removed the case, contending that Choi was a sham

12 defendant. Notice of Removal, ECF No. 1.

13       About a month later, Reynolds submitted an errata to his deposition. Mot. To Remand, Exh. C,

14 ECF No. 15 ("Dep. Errata"). Apparently, Reynolds had reinvigorated his memory during the intervening

15 time. In the deposition, he said he could not recall problematic comments outside of the reviews,

16 Reynolds Dep. at 44:14-18; in his errata, "there were other times besides the reviews," Dep. Errata. In the

17 deposition, he said Choi referenced replacing him only once, Reynolds Dep. at 45:7-15; in his errata,

18 "there were other times" too, Dep. Errata. In the deposition, he said that he could not recall any other

19 instances of Choi remarking about his retirement, Reynolds Dep. at 45:22-46:10; in his errata, "there were

20 other times and comments," Dep. Errata. In the deposition, he said his colleagues had not commented on

21 his memory, Reynolds Dep. at 47:19-22; in his errata, "there were other similar comments," Dep. Errata.

22 In the deposition, he said Choi never exhibited irritation with him, Reynolds Dep. at 47:13-14, 63:15-19;

23 in his errata, Choi sometimes "got in [Reynolds's] face about [his] age," Dep. Errata. In the deposition,

24 he said he never reported Choi's comments because he "just felt terrible" and "internalized" them,

25 Reynolds Dep. at 49:12-50:3; in his errata, Choi also threatened Reynolds "to not go over his head, 'or

26 else,'" Dep. Errata. And in the deposition, he said Choi had only made condescending comments within

27 the past two years, Reynolds Dep. at 64:1-6; in his errata, Choi had made those kinds of comments for

28 "the past have [sic] a dozen years increasingly," Dep. Errata.

Reynolds moved to remand the case a few weeks later arguing that the parties were not diverse because Choi was not a sham defendant.  Mot. to Remand, ECF No. 15.  In opposition, Choi swore he never initiated a discussion with Reynolds about retirement — which would be against company policy — and only discussed the topic when Reynolds raised it.  Decl. of Douglas Choi, ¶ 9, ECF No. 20.  Reading Choi's declaration prompted further memories from Reynolds, which he supplied in a declaration attached to his reply brief.  Decl. of James Reynolds, ¶ 2, ECF No. 25.  In this declaration, Reynolds's nebulous references to "other times" sprung into specificity: Choi had asked Reynolds about retirement in late 2012 or early 2013; he reiterated this inquiry during a July 25, 2013, performance review (and also said, "[y]ou know I could hire a younger person"); he refused to allow a coworker to tutor Reynolds on necessary computer skills, disparaging Reynolds, "a younger computer whiz could by far outperform you"; he "frowned" at Reynolds every time they passed for eight months between July 2013 and March 2014; and he told a group of engineers that they had "a lot of elderly people" and he would "bring[] down some younger people into the group, probably from Seattle."  *Id.* at ¶¶ 3-8.

## DISCUSSION

The parties dispute two issues: first, was Reynolds's motion to remand timely; second, are the parties completely diverse?  The answers are yes and no, respectively, so the Court must remand the case. Reynolds also applies for sanctions against Boeing, which the Court denies.

## I.    Timeliness

After a defendant removes a case, the plaintiff can move to remand on either procedural or substantive grounds.  *See* 28 U.S.C. § 1447(c).  Procedural challenges — those arguing that the defendant failed to comply with the formalities of removing a case — are subject to a thirty day time limit.  *Id.* Substantive challenges — those concerning the existence of subject matter jurisdiction itself — can be raised at any time.  *Id.*

Reynolds moved to remand the case because one defendant, Choi, is a California citizen.  That fact raises two conceivable bases for remand.  First, the challenge could be procedural.  The forum-defendant rule prevents a group of defendants from removing a case if one of them is a citizen of the

1  forum state.  28 U.S.C. § 1441(b)(2).[1]  Because the case previously resided in California Superior Court,

2  Reynolds could have objected to removal based on the forum-defendant rule.  Second, the challenge

3  could be substantive.  Federal diversity jurisdiction requires complete diversity.  *Caterpillar Inc. v. Lewis*,

4  519 U.S. 61, 68 (1996).  Because Reynolds and Choi are California citizens, Reynolds could have argued

5  that Choi's presence destroyed diversity.

6  This duality led the parties to debate timeliness, and, in a sense, both are correct.  Reynolds

7  moved to remand fifty-seven days after removal.  As a result, he waived all procedural challenges,

8  including any objection premised on the forum defendant rule.  *Smith v. Mylan Inc.*, 761 F.3d 1042, 1046

9  (9th Cir. 2014).  He did not, nor could he, waive his right to argue that the Court lacked jurisdiction due

10 to incomplete diversity.  *Attorneys Trust v. Videotape Computer Products, Inc.*, 93 F.3d 593, 595 (9th Cir.

11 1996).  Indeed, the Court is duty-bound to investigate this issue at any time.  *United Investors Life Ins.*

12 *Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 966-67 (9th Cir. 2004).  Reynolds's motion is therefore timely

13 to the extent he argues that Choi's participation in the case precludes complete diversity.  *See Behrazfar v.*

14 *Unisys Corp.*, 687 F. Supp. 2d 999, 1001-04 (C.D. Cal. 2009).

15 **II.    Diversity**

16 Federal diversity jurisdiction requires complete diversity of citizenship.  *Caterpillar*, 519 U.S. at

17 68.  The burden of establishing jurisdiction rests on the removing party.  *Scott v. Breeland*, 792 F.2d 925,

18 927 (9th Cir. 1986).  And the removing party must carry that burden in spite of the strong presumption

19 against removal jurisdiction.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

20 Courts, however, disregard the citizenship of sham defendants — those fraudulently joined —

21 when assessing diversity.  *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).  To prove

22 fraudulent joinder, the removing defendant must show that settled law obviously precludes the liability

23 against the nondiverse defendant.  *Id.*; *see also Lujan v. Girardi Keese*, No. CIV. 09-00017, 2009 WL

24 5216906, at *6 (D. Guam Dec. 29, 2009) ("The standard to be applied is something akin to a 12(b)(6)

25 type analysis but not as stringent.").  The removing party must establish fraudulent joinder by clear and

26 convincing evidence.  *Hamilton Materials, Inc. v. Dow Chemical Corp.*, 494 F.3d 1203, 1206 (9th Cir.

27

28     [1]    The Ninth Circuit found that the forum defendant rule was procedural in *Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 935-36 (9th Cir. 2006).

1   2007).  And it must overcome an additional presumption against fraudulent joinder.  *Hunter v. Philip*

2   *Morris USA*, 582 F.3d 1039, 1042, 1046 (9th Cir. 2009).

3          The crucial lever in this case is whether the Court can consider and credit Reynolds's errata and

4   declaration to the extent they contradict his deposition testimony.  It is well established that courts may

5   "pierce the pleadings," *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003), and examine evidence, *Ritchie*,

6   139 F.3d at 1318.  It is also well established that courts ought to construe facts in favor of the plaintiff

7   where there is disputed evidence.  *Travis*, 326 F.3d at 649.  The question here is somewhat different, and

8   it appears to be an issue of first impression in this circuit: can a court consider an errata and declaration

9   contradicting sworn deposition testimony when determining whether a party is a sham defendant?

10          The parties have not identified any relevant cases, and the Court has found only one, *TKI, Inc. v.*

11   *Nichols Research Corp.*, 191 F. Supp. 2d 1307 (M.D. Ala. 2002).  There, the plaintiffs sued three

12   defendants in Alabama state court for breach of contract and negligent misrepresentation.  *Id.* at 1309.

13   The defendants removed the case, contending that the non-diverse defendant was fraudulently joined.  *Id.*

14   The plaintiff moved to remand and submitted an affidavit in support.  *Id.* at 1310.  The court, relying on

15   plaintiff's affidavit, granted the motion and remanded the case.  *Id.*  Subsequent discovery led to the

16   plaintiff's deposition wherein he contradicted the statements in his affidavit and undermined the

17   evidence's foundation.  *Id.* at 1310, 1314-15.  The defendants then removed the case a second time, and

18   the plaintiffs again moved to remand.  *Id.* at 1309.  The district court noted that it, like the Court here,

19   faced not only "a mere conflict between the Plaintiffs' evidence and the Defendants' evidence, but also a

20   purported conflict between a Plaintiff's own affidavit and deposition."  *Id.* at 1314.  Because "the

21   fraudulent joinder" inquiry "is a summary-judgment like process," the court ruled, "the rules governing a

22   conflict between sworn affidavit and deposition testimony in the context of motions for summary

23   judgment [applied]."  *Id.*[2]

24   _____

25   [2]   In *Ross v. Citifinancial, Inc.*, the United States District Court for the Southern District of Mississippi
         similarly found that a plaintiff could not use an *unexplained* affidavit to contradict prior sworn testimony.
26       No. CIV.A.5:01-CV-185BN, 2002 WL 461567, at *10 (S.D. Miss. Mar. 18, 2002).  Here, however, Reynolds
         offered an explanation: he attributed any inaccuracies in his deposition to Tramadol, a pharmaceutical he had
27       been taking at the time.  Reynolds Decl., ¶ 9.  This explanation may have its pitfalls — for example, he stated
         that he weaned off Tramadol about a week before his June 29 declaration, discrediting his errata, dated May
28       13, 2015, to the same extent he excused errors in his deposition — but Boeing advanced no challenge to this
         explanation despite filing a sur-reply.

Although this position is reasonable, the Court finds it unpersuasive here.  To begin, there are two important features distinguishing this case from *TK1*.  More general considerations also militate against applying the sham declaration rule in the context of a fraudulent joinder analysis.  And together these considerations present a compelling case against disregarding Reynolds's declaration and affidavit.

First, *TK1* involved a false evidentiary conflict.  The *TK1* court found that the plaintiff's deposition testimony showed he had no personal knowledge of the facts stated in his affidavit.  191 F. Supp. 2d at 1314.  The affidavit therefore lacked an adequate foundation and was inadmissible.  *See* Fed. R. Evid. 602.  Thus, the evidence did not conflict: two pieces of evidence said opposite things, but only one document could be considered by the court.  This Court, in contrast, faces a true conflict amongst Reynolds's testimonies.  Reynolds's errata reversed several key portions of his deposition testimony, and his declaration further amended the substance of his prior statements.  Each piece of evidence, however, has an adequate foundation, so this Court cannot rely on the Rules of Evidence to prefer one document over another.

Second, a theme of judicial estoppel ran through *TK1*.  That court initially remanded the case based on the plaintiff's affidavit.  191 F. Supp. 2d at 1310.  When later deposition testimony undermined the affidavit and showed that such reliance was misplaced, the court stopped the plaintiffs from profiting further from their bamboozlement.  *See id.* at 1315.  Indeed, principles of estoppel often attach when a court adopts assurances made by a plaintiff seeking remand.  *See, e.g.*, *Burg v. Primal Vantage Co.*, No. 13-CV-1121S, 2014 WL 448519, at *6 (W.D.N.Y. Feb. 4, 2014).  In this case, however, no court has relied on Reynolds's testimony.  The judicial estoppel subtext is therefore absent, damming the equitable undercurrent that steered *TK1*.

Third, there are more general reasons to resist *TK1*'s embrace of a summary judgment rule while assessing fraudulent joinder: the two analyses do not mix well, so the rules employed at summary judgment do not always fit the fraudulent joinder paradigm.  In the words of the Eleventh Circuit, "the substantive standards are very different," and "district courts must exercise extraordinary care to avoid jumbling up motions for remand and motions for summary judgment that come before them."  *Crowe v. Coleman*, 113 F.3d 1536, 1542 (11th Cir. 1997).

To begin, the substantive analyses are dissimilar, and the specific rules attending one do not serve

the purposes of the other.  A party usually moves for summary judgement after completing discovery, *In re TJX Companies Retail Sec. Breach Litig.*, 564 F.3d 489, 495 (1st Cir. 2009), and the court reviews the record to see if there is a triable issue of fact for a jury to decide, Fed. R. Civ. P. 56.  It is therefore understandable that a court would not allow a plaintiff — who has had every opportunity to develop the facts of his case — to manufacture a triable issue by contradicting himself.  *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266-67 (9th Cir. 1991).  Indeed, "[t]he very object of summary judgment is to separate real and genuine issues from those that are formal or pretended, so that only the former may subject the moving party to the burden of trial."  *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975).  The purpose of a fraudulent joinder analysis, however, is quite different.  "[T]he focus of the inquiry must be on the joinder, not the merits of the plaintiff's case."  *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004).  A court therefore cannot engage in "extensive fact finding."  *Oxendine v. Merck & Co.*, 236 F. Supp. 2d 517, 525 n.4 (D. Md. 2002).  It cannot "delv[e] too far into the merits."  *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999).  And it must limit itself to "checking for obviously fraudulent or frivolous claims."  *Bender v. Am. Gen. Life & Acc. Ins. Co.*, No. 2:04 CV 398 F, 2005 WL 1221835, at *2 (M.D. Ala. May 23, 2005).  In fact, the consideration of evidence is discretionary in a fraudulent joinder analysis, *Smallwood*, 385 F.3d at 573, and, in some courts, piercing the pleadings is the exception rather than the norm, *see, e.g.*, *McGilbert v. Safeco Ins. Co. of Ind.*, No. CIVA H-10-514, 2010 WL 1633353, at *2 (S.D. Tex. Apr. 22, 2010); *Vinewood Capital, LLC v. Sheppard Mullin Richter & Hampton LLP*, No. CIV.A.3:09-CV-2459-L, 2010 WL 1267237, at *3 (N.D. Tex. Apr. 2, 2010).  Thus, the rules for summary judgment do not translate to the fraudulent joinder inquiry: a plaintiff may not create a *triable* issue of fact with nothing more than his own contradictory testimony, but it is presumptuous to say that it will be *impossible* for him to eventually establish liability when he has begun the case by offering two versions of the facts.  *See Travis*, 326 F.3d at 649-50.

The dual presumptions against fraudulent joinder counsel further in this direction.  There is no presumption for or against summary judgment.  But there is a presumption against removal, *Gaus*, 980 F.2d at 566, and another against finding fraudulent joinder, *Hunter*, 582 F.3d at 1046.  These presumptions caution against dismissing a party as fraudulently joined based on ambiguity.  *See Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990).  And that is what the Court faces here:

7

Reynolds's conflicting testimonies create factual uncertainty.  Although courts will not allow plaintiffs to manufacture ambiguity via contradiction at the final moment before trial, such a stringent approach should not attend a preliminary phase where the court must, in light of the undeveloped record, exercise extreme caution not to prejudge the plaintiff's case.  *See Rutherford v. Merck & Co.*, 428 F. Supp. 2d 842, 847-48 (S.D. Ill. 2006).

The consequences of remand also are less prejudicial than denying a motion for summary judgment.  Allowing a plaintiff to create a triable issue of fact through self-contradiction exposes defendants to the expense and risk of trial.  *See Spellbound Dev. Grp., Inc. v. Pac. Handy Cutter*, No. SACV 09-00951 DOC, 2011 WL 5554312, at *6 (C.D. Cal. Nov. 14, 2011).  It is unfair to hold a trial whenever an unscrupulous plaintiff, having failed to generate an actual controversy, swears out a sham declaration.  *See Kennedy*, 952 F.2d at 267.  Less so here: the case proceeds only in a different forum under the same rules of decision — the parties face no more and no less litigation than they otherwise would.  Thus, there is less of a need to dissect incongruities in the plaintiff's evidence at this stage.[3]

In sum, courts ought to be unexacting when reviewing the evidence of fraudulent joinder.  It follows that a court should not disregard contradictory declarations absent actual fraud or estoppel.  Reynolds's errata and declaration are therefore within the ambit of evidence to be considered here.[4]

And with all of the evidence considered, Boeing cannot prove that Reynolds fraudulently joined Choi.  To do so, it would have to show that settled law obviously precludes the liability against Choi.  *See Ritchey*, 139 F.3d at 1318.  The evidence, however, is more than enough to make it *possible* that Choi could be liable.

For example, Reynolds advances a hostile work environment against Choi.  Under California's

---

[3]   Moreover, the declarant always must be wary of perjuring himself as well as the admonishment, "[i]f you . . . change the meaning of the answer, [an] attorney can comment on that change should this matter proceed to trial."  Reynolds Dep. at 7:19-22.  Lawyers, for their part, must remember their obligations under Federal Rule of Civil Procedure 11.

[4]   The Court also declines to strike Reynolds's errata sheet under Federal Rule of Civil Procedure 30.  Courts ought to make such inquiries when the errata aims to fabricate a triable issue to survive summary judgment.  *Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc.*, 397 F.3d 1217, 1224-26 (9th Cir. 2005).  But, for the reasons just described, it is less appropriate to do so while assessing fraudulent joinder (absent actual fraud or estoppel).  The Court makes no comment on whether Reynolds's errata sheet abuses discovery and warrants sanctions by the state court.  *See* Cal. Code Civ. P. § 2023.030.

1  Fair Employment and Housing Act, a defendant is liable for creating or perpetrating a hostile work

2  environment.  *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 279 (Cal. 2006); *see also Page v.*

3  *Superior Court*, 31 Cal. App. 4th 1206, 1212 (Cal. Ct. App. 1995) (allowing employees to sustain

4  harassment claims under FEHA against their supervisors).[5]  To prevail on such a claim, "an employee . . .

5  must demonstrate that the conduct complained of was severe enough or sufficiently pervasive to alter the

6  conditions of employment and create a work environment that qualifies as hostile or abusive to employees

7  because of their [protected characteristic]."  *Lewis v. City of Benicia*, 224 Cal. App. 4th 1519, 1528-29

8  (Cal. Ct. App. 2014).  This inquiry considers the totality of circumstances, including "the frequency of the

9  discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

10  offensive utterance; and whether it unreasonably interferes with an employee's work performance."

11  *Miller v. Dep't of Corr.*, 36 Cal. 4th 446, 462 (Cal. 2005) (quoting *Harris v. Forklift Syst. Inc.*, 510 U.S.

12  17, 23 (1993)).

13       Reynolds's evidence is sufficient to create possible liability.  According to the most favorable

14  interpretation of his conflicting testimony, *see Charlin v. Allstate Ins. Co.*, 19 F. Supp. 2d 1137, 1140

15  (C.D. Cal. 1998), Choi made several ageist remarks over several years, which could qualify as severe or

16  pervasive, *see, e.g.*, *Dee v. Vintage Petroleum, Inc.*, 106 Cal. App. 4th 30, 36-37 (Cal. Ct. App. 2003).

17  Reynolds therefore states a possible hostile work environment claim.

18       Nor, as Boeing contends, is the claim obviously precluded by the statute of limitations.  A

19  plaintiff must file a complaint with the California Department of Fair Employment and Housing within

20  one year of the offending event to preserve a FEHA claim.  Cal. Gov't. Code § 12960.  Again, construing

21  the contradictory testimony in Reynolds's favor, at least one of the instances contributing to the alleged

22  hostile work environment occurred within this time.  *See* Reynolds Decl., ¶¶ 4-7.  And it is possible that

23  Choi's other comments could be found timely under California's continuing violations doctrine.  *See*

24  *Birschtein v. New United Motor Mfg., Inc.*, 92 Cal. App. 4th 994, 1004 (Cal. Ct. App. 2001).

25

26

27

28

---

[5]     Although it appears to be an open question whether FEHA recognizes an age-based hostile work environment theory, *Alva v. Ballantyne*, No. B176997, 2006 WL 10080, at *8 (Cal. Ct. App. Jan. 3, 2006) (unpublished), all ambiguous questions of state law are resolved in favor of Reynolds at this time, *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 259 (5th Cir. 1995); *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989); *see also Morris v. Nuzzo*, 718 F.3d 660, 671 n.5 (7th Cir. 2013).

Boeing thus failed to prove by clear and convincing evidence that there is no possibility Choi will face liability in this case.  Because Choi is not a sham defendant, the Court must consider his citizenship while assessing diversity.  This case therefore involves a plaintiff and defendant from California, so the Court lacks diversity jurisdiction and must remand the matter to state court.

**III.     Sanctions**

Reynolds also asked the Court to impose sanctions on Boeing for filing a sur-reply without leave. The Court may sanction a party for violating the Local Rules.  C.D. Cal. R. 83-7; *Zambrano v. City of Tustin*, 885 F.2d 1473, 1476-80 (9th Cir. 1989).  The decision, however, is discretionary.  *F.T.C. v. Alaska Land Leasing, Inc.*, 799 F.2d 507, 510 (9th Cir. 1986).

The Court declines to levy sanctions against Boeing.  True, Boeing violated the Local Rules by filing a sur-reply without written leave from the Court.  C.D. Cal. R. 7-10.  But its sur-reply was short and did not cause unreasonable hassle or delay for Reynolds or the Court.  *See* Def.'s Sur-Reply, ECF No. 27. Moreover, the Court would hesitate to penalize Boeing for a minor infraction without sanctioning Reynolds for his transgressions: his declaration was unsigned,[6] *see* C.D. Cal. R. 5-4.3.4, and his 17-page reply was too long, *see* New Case Order, ¶ 3A, ECF No. 10.  Instead of sanctions, the Court admonishes both parties to comply with the rules of court in the future.

**CONCLUSION**

For the foregoing reasons, the case is **REMANDED** to the Superior Court of California, County of Los Angeles.

Dated: July 28, 2015

_____
          STEPHEN V. WILSON
        United States District Judge

---

[6]     Boeing failed to challenge the declaration's authenticity despite the opportunity to do so in its sur-reply.  *See, e.g., Tanner ex rel. Tanner v. Comm'r of Soc. Sec.*, No. 8:13-CV-2835-ORL-GJK, 2015 WL 1456985, at *2 n.4 (M.D. Fla. Mar. 30, 2015) (finding that a failure to challenge authenticity "tacitly concede[d]" the point).